(No. 57729.—

QUALITY WOOD PRODUCTS CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Oliver P. Morrison, Appellee).

*Opinion filed September 23, 1983.*

Richard C. Hayden and Michael K. Lulich, of Craig & Craig, of Mattoon, for appellant.

Scheele, Serkland & Boyle, Ltd., of Chicago (Stephen M. Cornelius, of counsel), for appellee.

JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant, Oliver P. Morrison, suffered a compression fracture of the L-1 vertebra on January 9, 1980, and a compression fracture of the L-3 vertebra on September 6, 1980, while at work as a factory foreman for respond-

ent, Quality Wood Products Corporation. After a hearing held pursuant to an application for adjustment of claim in relation to the first injury, an arbitrator awarded claimant 16¼ weeks of compensation for temporary total disability and 30 weeks of compensation for permanent loss of use of 15% of his left leg under section 8(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)). Respondent was also ordered to pay $8,401.39 for necessary first aid, medical, surgical and hospital services. In connection with the second fracture, the arbitrator, after finding that claimant's condition was temporary and not yet permanent in nature, awarded compensation for a period of 21⅚ weeks, as well as necessary first aid, medical, surgical and hospital expenses. Both parties sought review and the Commission, after consolidating the claims for consideration, increased the arbitrator's award of 30 weeks of compensation in connection with the first injury to 60 weeks of compensation under section 8(d)(2) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(d)(2)). The Commission also increased claimant's compensation for the second injury to 38²/₇ weeks and ordered respondent to pay interest to claimant under section 19(n) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.19(n)). In all other respects the arbitrator's award was affirmed. On review by writ of *certiorari,* the circuit court of Shelby County confirmed the Commission's decision and respondent appealed to this court pursuant to Rule 302(a) (73 Ill. 2d R. 302(a)).

According to claimant's undisputed testimony, the first fracture occurred when he attempted to assist a fellow employee in carrying a generator owned by respondent which weighed between 450 and 500 pounds. The second fracture occurred nine months later when claimant was sliding a 25-pound sack of dog food used in feeding respondent's guard dogs from the trunk lid of his car onto a cart on respondent's premises. Claimant had re-

cently been advised by his orthopedist that he could begin increasing his lifting activities beyond an earlier-imposed 20-pound limit, but when claimant attempted to hold the full weight of the sack while turning to set it down, he felt two snaps and immediate pain in his back.

Respondent first contends that the Commission's award of compensation is contrary to the manifest weight of the evidence because claimant's physical condition had deteriorated to the point where even normal exertion would produce injury. In support of that argument, respondent relies on the deposition of Dr. James McKechnie, claimant's orthopedic surgeon, who testified that claimant suffered from osteoporosis, a condition which weakens bone structures and makes them more susceptible to compression fractures. Dr. Barry Samson, an orthopedist who examined claimant at respondent's request after his second injury, also noted in his report that claimant suffered from osteoporosis. Pointing to the fact that claimant's second injury resulted from a relatively minor lifting effort within a relatively short time after the first injury, respondent argues that claimant's condition was such that he could have sustained the same injury in the everyday course of events and that it was merely coincidental that he happened to be engaged in work-related activities when he suffered the fractures.

It is, of course, elementary that a claimant under the Workers' Compensation Act must prove that his injury arose out of and in the course of his employment. (See, e.g., *Jones v. Industrial Com.* (1983), 93 Ill. 2d 524, 526; *Rogers v. Industrial Com.* (1980), 83 Ill. 2d 221, 223; *Eagle Discount Supermarket v. Industrial Com.* (1980), 82 Ill. 2d 331, 337.) An employer takes his employees as he finds them (*Doyle v. Industrial Com.* (1981), 86 Ill. 2d 544, 549), and the fact that a preexisting condition contributed to the injury does not bar compensation if the employment was also a causative factor. (*Williams v. In-*

dustrial Com. (1981), 85 Ill. 2d 117, 122; *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 18; *Cossident v. Industrial Com.* (1974), 57 Ill. 2d 33, 37; *Okaw Homes, Inc. v. Industrial Com.* (1968), 40 Ill. 2d 81, 84.) "The sole limitation to the above general rule is that where it is shown that the employee's health has so deteriorated that any normal daily activity is overexertion, or where it is shown that the activity engaged in presented risks no greater than those to which the general public is exposed, compensation will be denied." *County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 18. See *Doyle v. Industrial Com.* (1981), 86 Ill. 2d 544, 550.

Resolution of these questions involves factual determinations by the Commission, and its decision will not be overturned unless it is contrary to the manifest weight of the evidence. (*Portec, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 303, 310; *Doyle v. Industrial Com.* (1981), 86 Ill. 2d 544, 551; *Williams v. Industrial Com.* (1981), 85 Ill. 2d 117, 122.) Although Dr. McKechnie testified that claimant's osteoporosis was more advanced than in most men of his age, he also stated that he thought it probable that attempting to carry the generator and the 25-pound sack of dog food caused claimant's fractures. Furthermore, there was no indication in the medical evidence that claimant's condition had deteriorated to the point where any activity would present a risk of fracture. Obviously, lifting the generator and maneuvering the sack onto a cart were duties of claimant's employment, and it seems clear that the Commission's conclusion that claimant's injuries were employment related must remain undisturbed.

Respondent also contends that the portion of the Commission's decision which ordered respondent to pay all of an $8,401.39 bill issued by Sarah Bush Lincoln Health Center must be reversed because it is contrary to the manifest weight of the evidence. Respondent unsuc-

cessfully objected to the admission of this bill, which was not itemized, on the grounds that the amount shown due included charges for treatment of some preexisting conditions not shown to have been aggravated by the employment.

After his first accident, claimant had immediately gone to Shelbyville Memorial Hospital for treatment, but had not been admitted. During the following 10 days, he suffered continued pain in his back and also noted the symptoms of an intestinal blockage, and again sought medical attention. He was admitted to Shelbyville Memorial Hospital on January 19, 1980, but was discharged and transferred to Sarah Bush Lincoln Health Center on January 25 into the care of Dr. Suthikant, who is identified in the record as a psychiatrist. The discharge report issued by Shelbyville Memorial Hospital indicates that the transfer was due to the onset of delirium thought to be the result of withdrawal from alcohol. Claimant remained at Sarah Bush Lincoln Health Center until February 18.

Neither party introduced any direct evidence concerning Dr. Suthikant's treatment of claimant, but claimant did introduce the depositions of Dr. McKechnie, his orthopedic surgeon, and Dr. Kasturi Tuli, an internist, both of whom acted as consultants at Dr. Suthikant's request and continued to treat claimant following his discharge from the hospital. Their testimony indicates that in addition to medical attention for his lumbar fracture, which alone would have required only a week-long stay in the hospital, claimant was treated for an intestinal blockage known as a paralytic ileus, pulmonary emboli, acute bronchitis superimposed on emphysema, ischemic heart disease and congestive heart failure. The testimony of both doctors indicates that claimant received psychiatric care. Dr. McKechnie testified that claimant's ileus condition was probably caused by the lumbar fracture and

that the symptoms caused by the ileus could have contributed to his mental confusion. Dr. McKechnie further stated that the treatment for claimant's ischemic heart disease, congestive heart failure, bronchitis and emphysema was not connected with the lumbar fracture. Dr. Tuli testified in a similar vein, noting that the lumbar fracture, by creating the need for bedrest, could have indirectly caused the pulmonary emboli, and that the emboli or the heart disease could have indirectly caused claimant's hallucinations by lowering the oxygen level in his blood. Other than the fracture, the bronchitis and the emboli, however, claimant's infirmities were characterized by Dr. Tuli as chronic and neither caused nor aggravated by the lumbar fracture.

As earlier noted, claimants bear the burden of proving by a preponderance of the evidence all elements necessary to sustain an award of compensation. (*Bemis Co. v. Industrial Com.* (1981), 85 Ill. 2d 291, 297; *Caterpillar Tractor Co. v. Industrial Com.* (1980), 83 Ill. 2d 213, 216-17.) Under section 8(a) of the Workers' Compensation Act, respondents may only be ordered to pay for treatment which is "reasonably required to cure or relieve from the effects of the accidental injury." (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(a). See *Furlong Construction Co. v. Industrial Com.* (1978), 71 Ill. 2d 464.) In view of the undisputed testimony indicating that claimant received treatment for ailments unrelated to his first lumbar fracture, the cost of which was apparently included in the unitemized bill, respondent's objection thereto should have been sustained. Since the Commission's finding that respondent should pay the entire cost of claimant's treatment is thus contrary to the manifest weight of the evidence, and there is in this record nothing enabling us to separate the eligible from the ineligible expenses, the cause must be remanded for the purpose of determining the extent to which the hospital

charges represent expenses for which respondent is chargeable.

The judgment of the circuit court is accordingly affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion.

*Affirmed in part and reversed in part; cause remanded, with directions.*