FRANK D. MITCHELL, Appellant and Cross-Appellee, v. THE INDUS-
TRIAL COMMISSION *et al.* (Ceco Corporation, Appellee and Cross-Appel-
lant).

Third District (Industrial Commission Division)   No. 3—85—0511WC

Opinion filed October 21, 1986.—Rehearing denied November 24, 1986.

Louis E. Olivero, of Peru, for appellant.

John E. Mitchell, of Henry D. Noetzel & Associates, Ltd., of Peoria, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Petitioner, Frank D. Mitchell, appeals from an order of the circuit court of Peoria County confirming an order of the Industrial Commission which had reduced the amount of compensation awarded him by an arbitrator. Petitioner asserts that the Commission erroneously found that compensation could not be awarded under both sections 8(d)(2) and 8(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, pars. 138.8(d), (e)). He further challenges the adequacy of the award made by the Commission under section 8(d)(2). In a cross-appeal respondent, Ceco Corporation, asserts that the trial court erred in denying its motion to dismiss petitioner's writ of *certiorari* for lack of jurisdiction.

On May 8, 1979, petitioner was employed as a carpenter at a construction site operated by respondent, his employer, in Peoria. While disassembling the forms that had been used to pour concrete, petitioner was struck in the head by a 4 inch by 6 inch piece of lumber that fell on him. Petitioner was knocked unconscious for about five minutes. He testified that he felt dizzy and nauseated when he revived and felt pain in his neck. He did no further work that day and, upon arriving home, went to the hospital for X rays. He was called by his physician the following morning and hospitalized from May 9 through May 15. During this period he was unable to move his left arm, his vision was blurred, and he had difficulty hearing. Following his release petitioner complained of constant headaches, dizziness and nausea, as well as an inability to tolerate sunlight. He was diagnosed as having a subluxation of the sixth cervical vertebra anteriorly on the seventh. X rays taken on July 17, 1979, revealed what appeared to be a chip fracture on the right side of C-5 and possibly also on C-4. Moreover, respondent's counsel stipulated before the arbitrator that

petitioner had suffered a compression fracture of C-6.

Petitioner had surgery on July 24, 1979, in which an anterior cervical fusion was performed and the herniated intervertebral disk was removed from the interspace. In the course of that surgery, a three—eighth-inch hole was made progressively between C-6 and C-7 and a bone dowel was countersunk in the hole.

Petitioner testified that he continues to experience headaches, numbness and a lack of strength in his left arm, and dizziness and blurred vision attendant upon exposure to the sun. He was examined in February 1981, at which time X rays showed spur formation on the fourth and fifth cervical vertebrae and "an irregularity involving the distal portion of the posterior spinous processes of the fifth and sixth cervical levels." The physician, Dr. Kaushal, thus found fractures of three cervical vertebrae with subluxation of the sixth and seventh cervical vertebrae by history. The doctor concluded that there had been a major loss of the use of the upper left arm and a moderate loss of use of the upper right.

Another doctor, Dr. Henderson, found that petitioner had full flexion and extension, with no objective evidence of neurological disfunction. The record also contains the report of Dr. Choi, an orthopedic surgeon who saw petitioner on May 14, 1979, and who did not feel that the subluxation of C-6 on C-7 was related to petitioner's recent trauma.

An arbitrator found that petitioner was entitled to receive $311.20 per week for 44 weeks for temporary total disability, as well as $247.36 per week for 197 weeks. The latter payment represented compensation for a 30% partial disability of petitioner and a 20% permanent and complete loss of use of the left arm. On review of the arbitrator's decision, the Industrial Commission noted that this was an award of both specific and permanent disability, both on account of the same injury. The Commission stated that "Sec. 8(d) 2 provides for compensation except in cases compensated under the specific schedule set forth in sec. 8(e)." The arbitrator's award was thus modified to find petitioner disabled to the extent of 30% under section 8(d)(2). The effect of this modification was to reduce the period of payment of the $247.36 increment from 197 weeks to 150 weeks. On *certiorari*, the circuit court affirmed, and this appeal followed.

In view of respondent's challenge to the jurisdiction of the circuit court to review the decision of the Industrial Commission in this case, we begin our analysis with an examination of the issue presented in the cross-appeal. Respondent notes that petitioner commenced his action for review of the Commission's decision by filing a writ of *cer-*

*tiorari,* writ of *scire facias,* praecipe, and receipt in the circuit court. Respondent filed a special and limited appearance and motion to dismiss, alleging that no summons had been issued, in alleged violation of section 19(f)(1). The trial court denied the motion. The court found that section 19(f)(1) had been amended in September 1983, approximately 10 months before commencement of proceedings in the circuit court, to require that a summons be issued rather than writs of *certiorari* and *scire facias.* The court further found that issuance of summons had not been requested, but that the recent statutory changes related only to matters of form, not of substance. Since petitioner had substantially complied with the intent of the new statute, respondent had suffered no injury whatsoever, and no public policy had been violated by the manner in which proceedings had been instituted, the court refused to dismiss the case.

On July 10, 1984, when petitioner filed his writs of *certiorari* and *scire facias,* section 19(f)(1) of the Act provided that the circuit court "shall by summons to the Commission had power to review" the decisions of the Commission. The statute further provided for issuance of the summons by the clerk, for return of summons within a specified period, and for the listing in the summons of the last known addresses of the parties in interest and their attorneys. It is undisputed that petitioner did not request issuance of summons in this case, and respondent contends that this failure to comply with the prescribed statutory procedure for seeking review of the Commission's decision has resulted in a lack of special subject matter jurisdiction. Respondent relies upon this court's recent opinion in *Board v. Industrial Com.* (1984), 129 Ill. App. 3d 56, 472 N.E.2d 105, which held that the failure of the petitioner in his praecipe to name a party in interest, which failure prevented the party from having notice of the circuit court's proceedings, deprived the court of subject matter jurisdiction. 129 Ill. App. 3d 56, 58, 472 N.E.2d 105.

■■ ■ The jurisdiction which the circuit court exercises in workers' compensation cases is a special statutory jurisdiction. (*Franklin v. Wellco Co.* (1972), 5 Ill. App. 3d 731, 734, 283 N.E.2d 913, *cert. denied* (1973), 411 U.S. 932, 36 L. Ed. 2d 392, 93 S. Ct. 1901.) A court can obtain jurisdiction to review a decision of the Commission only in the manner prescribed by the legislature. (*Berry v. Industrial Com.* (1973), 55 Ill. 2d 274, 277.) Strict compliance with the statute establishing the procedure for obtaining this jurisdiction is required before the circuit court obtains subject matter jurisdiction. *Boalbey v. Industrial Com.* (1977), 66 Ill. 2d 217, 218.

■■ Prior to the effective date of the 1983 amendment, section

19(f)(1) (Ill. Rev. Stat. 1981, ch. 48, par. 138.19(f)(1)) provided for review of the Commission's decision by writ of *certiorari*, which writ, together with the writ of *scire facias*, was to be issued by the clerk of the circuit court upon a praecipe. The statutory provisions for return of the praecipe and its contents were identical to those established by the current statute for summonses. In reviewing the record in the present case, we observe that the praecipe employed by petitioner contained the names and addresses of all parties in interest and their attorneys and served the same purpose as a written request for issuance of summons. The writs served pursuant to that praecipe were headed with their respective titles rather than the word "summons," but petitioner's writ of *certiorari* did command the Industrial Commission "to certify to this Court on or before September 7, 1984, a complete transcript of all proceedings *** in which a decision or award was rendered on June 19, 1984, by you for petitioner on certiorari and against the respondent on certiorari." Further, the writ of *scire facias* provided, "YOU ARE SUMMONED and required to file your appearance in this cause in the Office of the Clerk of this Court on or before September 7, 1984, and show cause why the decision of the Industrial Commission of Illinois rendered on June 19, 1984 for petitioner on certiorari and against respondent on certiorari should not be modified. If you fail to do so, the decision or award may be modified."

■ The form of summons in proceedings to review orders of the Industrial Commission is provided by Supreme Court Rule 292 (103 Ill. 2d R. 292). In all material respects the contents of the summons as required by rule are identical to the contents of petitioner's writs of *certiorari* and *scire facias*. While the form and headings of petitioner's pleadings are different than those provided for by Rule 292, we consider that their substantive effect, once directed by the clerk of the circuit court to the parties to whom they were addressed, was identical to that served by a summons. The character of a pleading is determined more from its content than from its label. (*Sobczak v. Whitten* (1979), 75 Ill. App. 3d 208, 213, 393 N.E.2d 1080; *Aebischer v. Zobrist* (1977), 56 Ill. App. 3d 151, 154, 371 N.E.2d 1003.) The trial court therefore properly denied the motion to dismiss.

■ This conclusion renders unnecessary resolution of the further question of whether respondent waived any lack of subject matter jurisdiction by urging affirmance of the Industrial Commission's decision after its special and limited appearance was denied. Although participation in judicial proceedings may waive an erroneous denial of a special and limited appearance where it has been asserted that juris-

diction is lacking (*Lord v. Hubert* (1957), 12 Ill. 2d 83; *Bell Federal Savings & Loan Association v. Belcastro* (1983), 115 Ill. App. 3d 281, 450 N.E.2d 830), a court may not be conferred with subject matter jurisdiction which is otherwise absent. Such a defect may be raised at any time. *Arrington v. Industrial Com.* (1983), 96 Ill. 2d 505, 509.

■■ We next address the claim that the Industrial Commission erred, in effect, by modifying the period for which certain benefits are payable from 197 weeks to 150 weeks. Petitioner asserts that the Commission erroneously concluded that he could not be compensated under both sections 8(d)(2) and 8(e) of the Act for the same injury. Section 8(d)(2) provides for payment of permanent partial disability benefits. As pertinent, it provides:

"If, as a result of the accident, the employee sustains serious and permanent injuries not covered by paragraphs (c) and (e) of this Section, or having sustained injuries covered by the aforesaid paragraphs (c) and (e), he shall have sustained in addition thereto other injuries which injuries do not incapacitate him from pursuing the duties of his employment but which would disable him from pursuing other suitable occupations, or which have otherwise resulted in physical impairment; *** he shall receive in addition to compensation for temporary total disability under paragraph (b) of this Section, compensation at the rate provided in subparagraph 2 of paragraph (b) of this Section for that percentage of 500 weeks that the partial disability resulting from the injuries covered by this paragraph bears to total disability. If the employee shall have sustained a fracture of one or more vertebrae ***, the amount of compensation allowed under this Section shall not be less than *** 60 weeks for each fractured vertebrae ***. Compensation awarded under this subparagraph 2 shall not take into consideration injuries covered under paragraphs (c) and (e) of this Section and the compensation provided in this paragraph shall not affect the employee's right to compensation payable under paragraphs (b), (c) and (e) of this Section for the disabilities therein covered." (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(d)(2).)

According to petitioner, the effect of the last sentence of this section is to sanction expressly an award under sections 8(d)(2) and 8(e).

Section 8(e) provides for loss of use of a member in cases where there has also been an award of temporary total disability benefits:

"For accidental injuries in the following schedule, the employee shall receive compensation for the period of temporary total incapacity for work resulting from such accidental injury, under

subparagraph 1 of paragraph (b) of this Section, and shall receive in addition thereto compensation for a further period for the specific loss herein mentioned, but shall not receive any compensation under any other provisions of this Act. ***" Ill. Rev. Stat. 1977, ch. 48, par. 138.8(e).

We believe the Commission erred when it concluded:

"The Commission notes that the Arbitrator made an award under both sec. 8(d)2 and sec. 8(e) for the same injury. Sec. 8(d)2 provides for compensation except in cases compensated under the specific schedule set forth in sec. 8(e). The Commission, therefore, modifies the Arbitrator's award, and finds based upon the medical evidence presented Petitioner was permanently disabled to the extent of 30% under sec. 8(d)2 of the Act."

The legislative scheme of section 8 (Ill. Rev. Stat. 1979, ch. 48, par. 138.8) is unambiguous as it relates to this case. Section 8(e) provides in relevant part:

"For accidental injuries in the following schedule, the employee shall receive compensation for the period of temporary total incapacity for work resulting from such accidental injury, under subparagraph 1 of paragraph (b) of this Section, and shall receive in addition thereto compensation for a further period for the specific loss herein mentioned ***.

* * *

16. For the permanent partial loss of use of a member *** compensation during that proportion of the number of weeks in the foregoing schedule provided for the loss of such member *** which the partial loss of the use thereof bears to the total loss of use of such member ***." (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e).)

Compensation for petitioner's injury to his left arm is, thus, provided for under section 8(e).

Section 8(d)(2) provides further compensation for serious and permanent injuries not covered by sections 8(c) and 8(e). Or, if the employee's injuries are covered by sections 8(c) and 8(e), the employee "shall have sustained in addition thereto other injuries" he shall receive, under certain conditions not necessary to our analysis here, in addition to compensation for temporary total disability under section 8(b), compensation as further described in section 8(d)(2). See, *e.g.*, *Quality Wood Products Corp. v. Industrial Com.* (1983), 97 Ill. 2d 417, 454 N.E.2d 668.

The arbitrator's findings were adopted by the Commission. Its de-

cision to deny recovery under section 8(e) was derived from its assumption that the arbitrator's findings described only one injury, *i.e.*, to the neck and back. It is apparent, however, that the arbitrator's findings describe an injury to the left arm as well as to the back, neck, and head. There is no prohibition in either section 8(d)(2) or 8(e) for multiple awards for multiple injuries. The findings of the arbitrator and, therefore, of the Commission were:

"The Petitioner sustained a chip fracture of the sixth cervical vertebra as well as a sublaxation [*sic*] of C6 over C7. The man had blurred vision for a time as well as left ear trouble. He became dizzy and was subject to severe headaches. His left shoulder was painful and would barely move. He had surgery involving a fusion of the said vertebrae. He lost time from work as a result of his injury through March 15, 1980.

The Petitioner now notices that the left arm has crepitis weakness, pain on use and atrophy. His left ear still pops. He still gets dizzy in sunlight. His vision is blurred at times. His neck hurts. He has a inch fusion scar on his neck. His left hand goes numb. His left arm has an electric feeling at times. It is weak."

■ The arbitrator could have articulated his findings in a manner more consistent with his awards for two injuries. Nonetheless, it is apparent that the findings adequately describe an injury to the left arm in addition to an injury to the person to the petitioner. The statutory provisions of section 8(d)(2) and section 8(e) do not preclude awards for back, neck, and head injuries and the partial loss of the use of the left arm, even though the debilities emanate from the same injury. See, *e.g.*, *Grady Co. v. Industrial Com.* (1970), 46 Ill. 2d 471, 474-75, 263 N.E.2d 809.

We reverse that part of the judgment of the circuit court of Peoria County and the decision of Industrial Commission which reduced petitioner's award from 197 weeks to 150 weeks and thereby reversed the arbitrator's 20% 8(e) award for loss of use of the left arm. We order the award of the arbitrator in this regard reinstated. We affirm the judgment of the circuit court on respondent's cross appeal.

Affirmed in part and reversed in part.

WEBBER, P.J., and KASSERMAN, BARRY, and McNAMARA, JJ., concur.