O'FALLON SCHOOL DISTRICT No. 90, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Karen Kenna, Appellee).

Fifth District   No. 5—99—0368WC

Opinion filed May 5, 2000.

Keith Short, of Feirich, Mager, Green, Ryan, of Carbondale, for appellant.

Charles J. Kolker, Jr., of Charles J. Kolker, Jr., P.C., of Belleville, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Karen Kenna (claimant) sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 138.1 *et seq.*) for injuries sustained on May 8, 1990, while in the employ of O'Fallon School District No. 90 (employer). The arbitrator denied benefits on the grounds claimant's injuries did not arise out of her employment. On review, the Industrial Commission (Commission) affirmed the decision of the arbitrator. The circuit court of St. Clair County, however, reversed the decision of the Commission and remanded the cause for the entry of an award of benefits. On remand, the Commission entered a decision in favor of claimant awarding her temporary total disability benefits for $1^3/_7$ weeks, medical expenses of $7,605.36, and 10% permanent partial disability. This time the circuit court confirmed the decision of the Commission. Employer appeals, contending claimant's injury did not arise out of her employment. We affirm.

Claimant worked as a sixth-grade teacher for employer. On the morning of May 8, 1990, claimant was assigned to hall duty, which meant she was responsible for insuring the safety of students moving

through the halls. The hallway to which she was assigned that day was particularly dangerous in that it included a 45-degree turn and there had been a problem with children running down the hall. Employer maintained a strict rule against running in the halls. Claimant was standing in the doorway of a classroom talking to another teacher when she noticed out of the corner of her eye a student running down the hall. Claimant turned, twisted, and began to pursue the child when she felt a pain in her lower back that felt like "somebody had skewered [her] back with a hot poker." Claimant continued working the rest of the day and then remained off work for 10 days. After using up her remaining sick and personal days, claimant returned to finish out the school year. She testified she often had to lie on the floor during the school day, however, to relieve the pressure off her back. She was able to return to teaching the next school year for employer. Claimant has since moved to Virginia, where she continues to teach. She testified she had no prior injuries to her back before the May 1990 incident but now continues to experience pain in her lower back and numbness in her left leg if she is on her feet too long. She stated she cannot stand or sit for more than an hour at a time and no longer does any lifting, pushing, or pulling.

Two days after the incident, claimant began treating with Dr. Fischer, a chiropractor. Dr. Fischer diagnosed claimant as suffering from spondylolisthesis at L5 and a disc protrusion. He opined that, based on claimant's history of no prior back problems, the May incident most likely caused the spondylolisthesis. Because claimant's pain persisted, Dr. Fischer referred her to Dr. Sheehan for a neurological consult. Dr. Sheehan examined claimant on July 12, 1990, and noted a minimal spondylolisthesis at L5-S1 with bilateral pars defect. While Dr. Sheehan believed this condition could be causing claimant's low back pain, he could not explain her complaints of a stocking-type analgesia because the nerve roots were free. He concluded claimant was not a surgical candidate, but he testified the pain she was experiencing was consistent with the injury she sustained from the May incident. At employer's request, claimant's medical records were reviewed by Dr. Mishkin. He concluded that claimant's spondylosis preexisted the May incident and did not cause the spondylolisthesis.

The arbitrator determined the May 1990 incident aggravated a preexisting spondylolisthesis but did not arise out of claimant's employment, as the activities of turning, twisting, and beginning to pursue a running child did not expose her to a risk greater than that to which the general public could be exposed. The circuit court, and ultimately the Commission, concluded the motion of twisting, turning, and running to restrain a child was a risk greater than that to which the general public was exposed, thereby entitling claimant to benefits.

■ We first address the issue of jurisdiction. Claimant asserts employer's appeal is untimely because employer failed to appeal the initial circuit court remand order. Claimant is wrong. An order of the circuit court reversing the decision of the Commission and remanding the cause back to the Commission for further disposition is interlocutory and not appealable. See *Stockton v. Industrial Comm'n*, 69 Ill. 2d 120, 124, 370 N.E.2d 548, 550 (1977); *West v. Industrial Comm'n*, 238 Ill. App. 3d 445, 446-47, 606 N.E.2d 598, 599 (1992). Employer correctly and timely appealed from the second order of the circuit court confirming the Commission's remanded decision, and we, therefore, have jurisdiction to entertain this appeal.

■ Turning to the merits, in order for an injury to be compensable under the Act, the injury must arise "out of" and "in the course of" the claimant's employment. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 57, 541 N.E.2d 665, 667 (1989); *Albrecht-Hamlin Chevrolet, Inc. v. Industrial Comm'n*, 262 Ill. App. 3d 655, 659, 635 N.E.2d 134, 137 (1994). For an injury to arise "out of" the employment, the injury must have occurred from some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. See *Caterpillar Tractor Co.*, 129 Ill. 2d at 58, 541 N.E.2d at 667. Typically, an injury arises out of the employment if, at the time of the incident or accident, the employee was performing acts he or she was instructed to perform by his or her employer, acts he or she had a common law or statutory duty to perform, or acts the employee might reasonably be expected to perform incident to his or her assigned duties. See *Albrecht-Hamlin Chevrolet, Inc.*, 262 Ill. App. 3d at 659, 635 N.E.2d at 137; *Komatsu Dresser Co. v. Industrial Comm'n*, 235 Ill. App. 3d 779, 786-87, 601 N.E.2d 1339, 1344 (1992). If the employee is exposed to a risk to a greater degree than the general public, the injury is similarly considered to have arisen out of the employment. See *Komatsu Dresser Co.*, 235 Ill. App. 3d at 787, 601 N.E.2d at 1344. If, on the other hand, the employee's exposure to the risk is equal to that of the general public, the injury is not compensable. See *Caterpillar Tractor Co.*, 129 Ill. 2d at 59, 541 N.E.2d at 667. We conclude claimant's injury arose out of her employment.

■ At the time of the incident, claimant had been assigned by her employer to hall duty. This meant claimant was responsible for insuring the safety of students and teachers in the hallways. Because the school had a strict policy against students running in the hallways, claimant, as hall monitor, was assigned specifically the task of stopping children from running in the hallways. While at her assigned station, claimant noticed out of the corner of her eye a child running

down the hallway. In response, claimant turned, twisted, and began to pursue the student. In so doing, claimant was injured. Contrary to the arbitrator's conclusion and the Commission's initial decision, claimant's injury did have an origin in a risk arising out of her employment. Claimant was ordered specifically to undertake the risk of pursuing a running student. The need to turn, twist, and pursue a child, thereby stressing her back, is a risk that would not have existed but for claimant's employment obligations as hall monitor. Consequently, claimant was exposed to a risk greater than that faced by the general public. Unlike those injuries sustained from removing a coat (see *Branch v. Industrial Comm'n*, 95 Ill. 2d 268, 447 N.E.2d 828 (1983)) or picking up fallen papers from the floor (see *Greater Peoria Mass Transit District v. Industrial Comm'n*, 81 Ill. 2d 38, 405 N.E.2d 796 (1980)), the cause of claimant's injury was connected to her employment. See *Interlake, Inc. v. Industrial Comm'n*, 161 Ill. App. 3d 704, 515 N.E.2d 202 (1987). As stated before, an injury arises in the course of employment when it occurs within the period of employment at a place where the employee can reasonably be expected to be in the performance of his or her duties and while he or she is performing those duties. See *All Steel, Inc. v. Industrial Comm'n*, 221 Ill. App. 3d 501, 503, 582 N.E.2d 240, 242 (1991).

■ Employer contends, however, that claimant's injuries resulted from a preexisting condition. Assuming such is the case, an employer is not relieved of liability because the injury arose from a preexisting condition. See *AC&S v. Industrial Comm'n*, 304 Ill. App. 3d 875, 882, 710 N.E.2d 837, 842 (1999). An employer takes its employees as it finds them. See *General Refractories v. Industrial Comm'n*, 255 Ill. App. 3d 925, 930, 627 N.E.2d 1270, 1274 (1994). Claimant needed only to show that some act or phase of the employment was *a* causative factor, not the sole or, indeed, principal cause, of the resulting injury. See *Teska v. Industrial Comm'n*, 266 Ill. App. 3d 740, 742, 640 N.E.2d 1, 3 (1994). Claimant had no problems with her back prior to the injury and, whether or not she had a preexisting condition of spondylolisthesis, had always been able to carry out all of her teaching duties and lead an active life. After the May incident, this was no longer the case. Claimant was in constant pain and her daily activities had to be greatly restricted. Even Dr. Sheehan testified the pain claimant was experiencing was consistent with the injury she sustained from the May incident. Clearly, the May incident aggravated, if not caused, her spondylolisthesis and her present condition of ill-being. Accordingly, employer's contention is without merit.

For the aforementioned reasons, we affirm the judgment of the circuit court confirming the decision of the Commission on remand.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and HOLD-RIDGE, JJ., concur.