INTERLAKE, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Ambrose Resa, Appellee).

First District (Industrial Commission Division)   No. 1—86—2390WC

Opinion filed September 18, 1987.

McCULLOUGH, J., dissenting.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Ronald L. Lipinski and Julie A. Garrison, of counsel), for appellant.

Fishman & Fishman & Saltzberg, of Chicago (Gerald B. Saltzberg and Sidney Z. Karasik, of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

On August 11, 1982, 42-year-old Ambrose Resa (claimant) filed an application for adjustment of claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) for injuries allegedly sustained as a result of an accident on July 27, 1982, during the course of his employment with Interlake, Inc. (Interlake). On Sep-

tember 14, 1983, pursuant to a section 19(b) petition, an arbitrator awarded claimant temporary total disability compensation of $327.04 per week for 26 weeks (Ill. Rev. Stat. 1981, ch. 48, pars. 138.8(b)(1), 138.19(b)), and medical expenses of $10,176.37 (Ill. Rev. Stat. 1981, ch. 48, par. 138.8(a)). The Industrial Commission affirmed the award, and the circuit court confirmed the Industrial Commission's decision. Interlake has perfected this appeal, raising a single issue: whether the act of bending over can be a compensable accident under the Workers' Compensation Act. We affirm.

The following evidence was presented at the arbitration hearing on April 27, 1983, and June 13, 1983: Claimant testified that he was employed by Interlake as a motor inspector and that he initially injured his back at work on April 19, 1982. On that occasion, claimant was working on an overhead crane and, as he descended a ladder, he fell six or seven feet, striking his lower back against a railing. He went to the company nurse and company doctor, Dr. Kramer, and eventually was sent to St. Francis Hospital for X rays. A radiology report states: "[N]o evidence of a fracture. There is a slight deviation of the upper lumbar spine toward the right which may be due to muscle spasm. The vertebral bodies are otherwise in satisfactory alignment. Mild degenerative lipping is seen on the margins of the lower thoracic vertebral bodies. No other bone or joint pathology is demonstrated." Claimant was treated conservatively with heat treatments and an elastic brace and was restricted to light duty for two to three weeks and was advised not to climb or perform excessive bending during this period. However, claimant testified that the back pain persisted. This incident was the subject of a separate application for adjustment of claim, the disposition of which is not an issue in this appeal.

On July 27, 1982, claimant was working with John Villaruel, Interlake's general electric maintenance foreman. Villaruel directed claimant to get a screwdriver. Claimant testified that his tool pouch was lying on the floor and that when he reached down to get a screwdriver from it, his back "snapped." Villaruel testified that he observed that claimant was in pain because of claimant's facial expression and stated that he, Villaruel, picked up the screwdriver himself.

Dr. Kramer, the company doctor, noted on July 29, 1982, that claimant had acute back pain. His notes for that day state: "See X Rays 20 April 82—Osteo Arthritis Dorsal Spine—Unfit for any work—No history of trauma—Recommend referral to personal physician for treatment."

Claimant was examined by Dr. Charles W. Mercier on August 3,

1982. Dr. Mercier's report of that date states, *inter alia*, that his examination revealed pain over the lower lumbo-sacral spine, muscle spasms and a right list. X rays revealed "an ununited accessory ossification center or fracture of the left transverse process of the 3rd lumbar vertebra." Dr. Mercier's diagnosis was a herniated disc. Doctor and patient agreed to a course of conservative treatment and if there was no improvement, then admission to the hospital.

On August 6, 1982, claimant was admitted to Columbus Hospital for conservative treatment: bed rest, traction, heat, physical therapy, and medication. Claimant was discharged on August 13, 1982, and released for work on September 20, 1982. Claimant returned to his regular duties on September 22, 1982, but the pain returned and increased.

Dr. Mercier saw claimant again on December 23, 1982, and on December 27, 1982, claimant was admitted to Columbus Hospital once again. On December 29, 1982, claimant underwent a hemilaminectomy and disc excision. He was released for work on May 9, 1983. Dr. Mercier testified at his deposition that claimant's disc problem could be directly related to the accident of July 27, 1982. Dr. Mercier explained that "[h]erniated disc can come from any number of stresses or strains even to the point of bending over to pick up a feather."

On September 14, 1983, the arbitrator awarded claimant temporary total compensation of $327.04 for 26 weeks plus $10,176.37 for medical expenses. The arbitrator found that "the injuries to the low back on April 19, 1982, predisposed the [claimant] to further injuries which manifested itself after the occurrence of July 22, 1982." The arbitrator relied on the testimony of Dr. Mercier and claimant and the case of *Memorial Medical Center v. Industrial Com.* (1978), 72 Ill. 2d 275, 381 N.E.2d 289.

On February 7, 1985, the Industrial Commission issued a notice of its decision affirming the arbitrator's decision. The Commission issued its decision and opinion on review on December 5, 1985, with one commissioner dissenting.

Interlake does not dispute that claimant injured his back when he bent over to pick up the screwdriver; however, it contends that claimant's act of bending over was a routine personal activity and that therefore claimant has not shown that his injury arose out of and in the course of his employment. The arbitrator and a majority of the Industrial Commission panel found that claimant's injury was work related. We agree.

■ ■ To constitute an accidental injury within the meaning of the Workers' Compensation Act, it suffices to show that an employ-

ee's existing structure, whatever it may be, gives way under the stress of his usual labor. (*Atlantic & Pacific Tea Co. v. Industrial Com.* (1977), 67 Ill. 2d 137, 141, 364 N.E.2d 83, 85.) Stated differently, to come within the Act, the claimant need only prove that some act or phase of the employment was a causative factor of the resulting injury. (*County of Cook v. Industrial Com.* (1977), 69 Ill. 2d 10, 17, 370 N.E.2d 520, 523.) This question is one of fact for the Industrial Commission, and we will not substitute our judgment for that of the Commission on the question of causation unless the Commission's findings are against the manifest weight of the evidence. (*Illinois Valley Irrigation, Inc. v. Industrial Com.* (1977), 66 Ill. 2d 234, 239, 362 N.E.2d 339, 342.) In the case at bar, claimant initially injured his back in a work-related accident. Claimant testified that he suffered further injury to his back when he bent over to pick up a screwdriver as directed by his supervisor. His supervisor corroborated claimant's testimony that claimant experienced pain when he bent over. Dr. Mercier testified that claimant's herniated disc and back problems could be directly related to the second incident of July 27, 1982. No contrary medical evidence was presented. We conclude that this evidence is sufficient to support the decision of the Commission.

Interlake contends that claimant's preexisting condition does not convert a routine act into a compensable accident. Interlake relies on the cases of *Greater Peoria Mass Transit District v. Industrial Com.* (1980), 81 Ill. 2d 38, 405 N.E.2d 796, *Board of Trustees of the University of Illinois v. Industrial Com.* (1969), 44 Ill. 2d 207, 254 N.E.2d 522, *Branch v. Industrial Com.* (1983), 95 Ill. 2d 268, 447 N.E.2d 828, and *Caterpillar Tractor Co. v. Industrial Com.* (1980), 83 Ill. 2d 213, 414 N.E.2d 740.

In *Caterpillar*, claimant alleged that she injured her back when she bent over to lift a part out of a tub. (83 Ill. 2d 213, 215, 414 N.E.2d 740, 741.) The arbitrator's award of benefits was affirmed by the Industrial Commission; however, the circuit court reversed. On affirming the denial of benefits, the supreme court noted that claimant's uncorroborated testimony regarding the manner in which she hurt her back was contradicted by her supervisor and by various documents and by her own prior written statements. (83 Ill. 2d 213, 217, 414 N.E.2d 740, 742.) The court further observed that the medical evidence indicated the absence of any connection between claimant's back problem and her employment. (83 Ill. 2d 213, 219, 414 N.E.2d 740, 743.) In the case at bar, however, claimant's supervisor corroborated his testimony regarding the manner in which claimant hurt his back on July 27, 1982, and the medical evidence established a causal

connection between claimant's employment and his injury. Thus, *Caterpillar* is distinguishable on its facts from the case at bar.

In *Branch*, an arbitrator awarded claimant temporary total disability and permanent partial disability (*Branch v. Industrial Com.* (1983), 95 Ill. 2d 268, 269, 447 N.E.2d 828); however, the Industrial Commission reversed and the circuit court confirmed the Commission. The claimant had testified that he felt a "hot poker" type pain when he removed his coat after arriving at work. He also had testified that he felt a sharp pain as he opened the door to the premises just prior thereto. However, claimant's treating physician testified that his written report did not include reference to an onset of pain when opening the door. (95 Ill. 2d 268, 270, 447 N.E.2d 828, 829.) The supreme court noted "the seemingly contradictory evidence of his treating physician," and also stated:

> "In the case at bar, the evidence showed the employee suffered a hot-poker pain when he was in the process of removing his coat, an act that he would have performed no matter where he might be when he came in from the outside or upon returning home at the end of the day. The petitioner has only shown that this occurrence took place at respondent's place of work, not that the cause of the injury is connected to his employment." 95 Ill. 2d 268, 271, 447 N.E.2d 828, 829.

In *Board of Trustees*, a teaching assistant was working at his desk when he heard something snap in his back as he turned in his chair. (*Board of Trustees of the University of Illinois v. Industrial Com.* (1969), 44 Ill. 2d 207, 209, 254 N.E.2d 522, 523.) The arbitrator and the Commission awarded benefits, but the circuit court reversed on the grounds that the evidence was insufficient to establish that the injury arose out of the employment. (44 Ill. 2d 207, 210, 254 N.E.2d 522, 524.) The supreme court affirmed the circuit court, finding that there was no evidence of causal connection between claimant's employment and his injury. (44 Ill. 2d 207, 214, 254 N.E.2d 522, 526.) The supreme court noted that "the medical evidence was that because of its degenerated condition any simple and normal activity would have caused the [claimant's] disk to rupture." The court concluded that the injury was not caused by a risk incidental to claimant's employment.

In *Greater Peoria Mass Transit*, claimant was a 32-year-old bus driver. As she returned from her bus route, she proceeded to the drivers' room to leave public schedules and transfers on a window ledge. (*Greater Peoria Mass Transit District v. Industrial Com.* (1980), 81 Ill. 2d 38, 40, 405 N.E.2d 796, 797.) Claimant testified that she

dropped a transfer and as she bent over to pick it up she lost her balance and stumbled, hitting her shoulder against something. Her testimony regarding what happened next was unclear, but she suffered a dislocated shoulder and underwent surgery. The arbitrator awarded disability payments and medical expenses. The Industrial Commission on review reduced the medical expenses and disability award, and the circuit court confirmed its decision; however, the supreme court reversed. The court relied heavily on medical testimony that because claimant had dislocated her shoulder before and was subject to repeated subluxations, any episode of minor trauma could have caused her shoulder to dislocate. (81 Ill. 2d 38, 41-42, 405 N.E.2d 796, 798.) The court agreed with the employer's contention that because of the preexisting condition, her injury was a risk of normal activity rather than a risk incidental to employment. The court stated:

"The employer, therefore, merely provided the occasion for its occurrence and did not cause it in any way. Completely absent from the record is any evidence that claimant's work (1) further deteriorated her shoulder, (2) aggravated it, (3) precipitated its dislocation, or (4) accelerated the occasion for its dislocation. (See 1 A. Larson, Workmen's Compensation sec. 12.20, and cases therein cited (1978).) There is, in short, no indication from the record that, but for her employment, her shoulder would 'have gone on functioning reasonably well for an indefinite time' (1 A. Larson, Workmen's Compensation sec. 12.20, at 3—310 (1978).)'' 81 Ill. 2d 38, 43, 405 N.E.2d 796, 799.

In the instant appeal, the claimant, the arbitrator, and the Industrial Commission all rely on the case of *Memorial Medical Center v. Industrial Com.* (1978), 72 Ill. 2d 275, 381 N.E.2d 289, in which claimant was employed in the hospital's housekeeping department. The testimony indicated that she had been seated, cleaning chrome on a door. After standing up, she bent over to polish a spot on the door's kickplate. She was then unable to straighten up. Hospital confinement and a laminectomy followed. The arbitrator and the Industrial Commission awarded compensation and the circuit court confirmed the award. The supreme court affirmed, rejecting the employer's assertions that the act of bending over forward is a routine motion not peculiar to claimant's work, that the true cause of her disability was her obesity and that she was not subjected to any greater risk than the public at large. The court relied on the medical testimony that the act of bending forward contributed to the employee's injury. 72 Ill. 2d 275, 279-80, 381 N.E.2d 289, 291.

The decisions in *Branch, Board of Trustees,* and *Greater Peoria*

*Mass Transit* are distinguishable in that in each of these cases the supreme court determined that the claimant's employment bore no relationship to the injury for which compensation was sought. In contrast in the case at bar, the evidence indicates that claimant had no back problems prior to the accident on April 19, 1982. After that accident, claimant was treated conservatively by the company doctor; and, after approximately three weeks on light duty, he returned to his regular duties. However, claimant testified that the back pain persisted during the period between the first accident on April 19, 1982, and the second accident on July 27, 1982. More than three months after the initial accident, claimant felt his back snap when he bent over to pick up a screwdriver at the explicit direction of one of his supervisors. As previously stated, the arbitrator expressly found that "the injuries to the low back on April 19, 1982, predisposed the [claimant] to further injuries which manifested itself after the occurrence of July 22, 1982."

"The Workers' Compensation Act was intended to provide financial protection for injured workers regardless of a showing of negligence or contributory negligence, while precluding the employee from common law tort remedies. [Citation.] To that end, it has been consistently held that the Act should be liberally construed to accomplish its purpose and objects." *Peoria County Belwood Nursing Home v. Industrial Com.* (1987), 115 Ill. 2d 524, 529, 505 N.E.2d 1026, 1028.

■ An injury arises out of employment when a causal connection exists between the employment and the injury such that the injury has its origins in some risk incidental to the employment. (*Technical Tape Corp. v. Industrial Com.* (1974), 58 Ill. 2d 226, 230, 317 N.E.2d 515, 517-18.) Based on the evidence that claimant initially injured his back in a work-related injury in April 1982 and that subsequently he suffered a herniated disc while working as a motor inspector, and while performing an act at the specific direction of his supervisor, there was sufficient evidence for the Industrial Commission to infer that claimant was exposed to a risk greater than that to which the general public is exposed and that his injury was caused by a risk incidental to his employment. According to the evidence in the case at bar, claimant's herniated disc was the result of only employment activities, that is, the prior accident and the current incident in which he bent over to pick up a screwdriver and, by inference, interim employment duties. There is no evidence that claimant's condition was a result of any other cause.

■ Interlake contends that the act of bending over is a personal, routine activity and that we should not consider claimant's prior

work-related accident. However, we conclude that the incident on July 27, 1982, cannot be considered in isolation. Since claimant's initial accident on April 19, 1982, appears to be a compensable, work-related injury, "the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause." 1 A. Larson, Workmen's Compensation sec. 13.11(a), at 3—354 (1985).

Professor Larson cites with approval a Utah case, *Perchelli v. Utah State Industrial Com.* (1970), 25 Utah 2d 58, 475 P.2d 835, which is similar to the case at bar. In *Perchelli,* claimant injured his back in 1966 in a compensable accident. Several years later, a sneeze triggered his condition into a herniated disc. The Utah court held that there was no evidence that the sneezing episode was an independent cause of claimant's disability and awarded benefits. 25 Utah 2d 58, 60-61, 475 P.2d 835, 837-38.

■ We agree with the principle and reasoning set out by Professor Larson and applied in *Perchelli.* We note that the arbitrator specifically found that claimant's initial accident predisposed him to further injuries and that there is no evidence of a nonemployment-related cause for claimant's herniated disc. We therefore conclude that the decision of the Industrial Commission was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed. This cause is remanded to the Industrial Commission for further proceedings on the issue of permanent disability. See *Thomas v. Industrial Com.* (1980), 78 Ill. 2d 327, 399 N.E.2d 1322.

Affirmed and remanded.

BARRY, P.J., and McNAMARA and WOODWARD, JJ., concur.

JUSTICE McCULLOUGH, dissenting:

Employee argues that the trial court should be affirmed and that a basis therefor is *Memorial Medical Center v. Industrial Com.* (1978), 72 Ill. 2d 275, 381 N.E.2d 289. *Memorial Medical Center* was limited to the facts of that particular case and the subsequent holdings of the supreme court in *Caterpillar Tractor Co. v. Industrial Com.* (1980), 83 Ill. 2d 213, 414 N.E.2d 740, *Greater Peoria Mass Transit District v. Industrial Com.* (1980), 81 Ill. 2d 38, 405 N.E.2d 796, and *Branch v. Industrial Com.* (1983), 95 Ill. 2d 268, 447 N.E.2d 828, are consistent with the facts presented in this case and as ar-

gued, mandate a reversal. In *Greater Peoria*, the employee, after she returned from work, started to put public schedules and transfers on a window ledge. As she went to put them up in the window, the transfers and schedules fell on the floor, she leaned over and when she did so, she said she hurt her back and fell against something and hit her shoulder. The supreme court in *Greater Peoria* stated,

> "An injury is accidental within the Act if a workman's physical structure, whatever it may be, gives way under the stress of one's usual labor, and claimants can recover on their own testimony without corroboration." (*Greater Peoria Mass Transit District v. Industrial Com.* (1980), 81 Ill. 2d 38, 41, 405 N.E.2d 796.)

The supreme court went on to say, however:

> "The employer correctly argues, however, that because she had dislocated her shoulder before and was subject to repeated subluxations (where the shoulder partially came out but did not dislocate) prior to the incident at issue, her injury was a result of normal activity rather than a risk incidental to her employment. The surgeon indicated that any episode of minor trauma—reaching for a cigarette or combing hair or turning over in bed while asleep—could have caused her shoulder to dislocate and that her shoulder was a 'time bomb' which would go off at an unpredictable time." 81 Ill. 2d 38, 41-42, 405 N.E.2d 796.

In reversing the Industrial Commission's decision in *Greater Peoria*, the court stated:

> "[B]ecause neither qualitative nor quantitative risks to the claimant were shown to be greater as a result of her employment, the Commission's determination that this injury arose out of her employment was contrary to the manifest weight of the evidence." 81 Ill. 2d 38, 43, 405 N.E.2d 796.

In the instant case, just as in *Greater Peoria*, the employee had a past record of a bad back. The fact that the bad back history indicates a prior accident at work which was the subject matter of a separate claim does not change the result to be rendered. The act of bending over as occurred under the circumstances of this case is not compensable and the circuit court's confirmation of the Industrial Commission decision should be reversed.

The most recent supreme court decision in this area, *Branch v. Industrial Com.* (1983), 95 Ill. 2d 268, 447 N.E.2d 828, cited *Greater Peoria* and confirmed the position taken in *Greater Peoria* when it said in *Branch*:

714

"This court noted that in order for the injury to be compensable, there must be a showing that the cause is connected to the employment or incidental to it and that more is required than the fact of an occurrence at the employer's place of work." *Branch v. Industrial Com.* (1983), 95 Ill. 2d 268, 271, 447 N.E.2d 828.