# Illinois Official Reports

## Appellate Court

---

*Young v. Illinois Workers' Compensation Comm'n*,
2014 IL App (4th) 130392WC

---

| | |
|---|---|
| Appellate Court Caption | DON YOUNG, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Doncasters, d/b/a MECO, Inc., Appellee). |
| District & No. | Fourth District<br>Docket No. 4-13-0392WC |
| Filed | July 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Workers' Compensation Commission's denial of benefits for the shoulder injury claimant suffered when he reached into a deep box as part of his job as an inspector of parts was against the manifest weight of the evidence, regardless of the fact that claimant's duties were not repetitive, since he was performing an act incidental to his duties at the time of his injury, and even though the act of reaching is performed daily by the general public, claimant's action was distinctly associated with his employment. |
| Decision Under Review | Appeal from the Circuit Court of Edgar County, No. 12-MR-62; the Hon. Steven L. Garst, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal    David M. Moss (argued), of Moss & Moss, P.C., of Clinton, for appellant.

Martin J. Haxel (argued), of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellee.

Panel    JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justices Hoffman, Hudson, and Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    On June 2, 2010, claimant, Don Young, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 to 30 (West 2008)), seeking benefits from the employer, Doncasters, d/b/a MECO, Inc., and alleging a work-related injury to his left shoulder that arose out of and in the course of his employment on February 19, 2010. Following a hearing, the arbitrator denied claimant benefits under the Act, finding his injury was caused by a risk to which the general public was equally exposed.

¶ 2    On review, the Illinois Workers' Compensation Commission (Commission), with one commissioner dissenting, struck a portion of the arbitrator's decision but otherwise affirmed and adopted his decision and ultimate ruling in the case. On judicial review, the circuit court of Edgar County confirmed the Commission's decision. Claimant appeals, arguing the Commission erred in finding his left shoulder injury did not arise out of his employment. We reverse and remand for further proceedings.

¶ 3    I. BACKGROUND

¶ 4    At arbitration, claimant testified he began working for the employer in 2006. He worked as an inspector and "inspect[ed] parts that [came] through [his] area." Claimant testified he was required to look at and examine parts to make sure they were made according to specifications, complete paperwork on each part, place each part into an appropriate container, and enter data into a computer. Claimant agreed that the number of parts he inspected each day varied and was dependent "on the particular order."

¶ 5    Regarding his February 19, 2010, accident, claimant testified as follows:

"I was in the process of checking some parts and I removed approximately eight of them from a box, and I was reaching for the last spring clip in the bottom of the box and as doing so I reached in and I felt a snap or a pop in my shoulder, a little bit of a burn, and I went on to finish what I was doing ***."

Claimant described the box he reached into as "about 36 inches deep or more and 16 by 16." He stated a "spring clip" was a piece of stainless steel formed into "a semi cone" and approximately 14 inches in diameter. The spring clips weighed between 12 and 20 pounds.

Further, claimant testified he had to "bend over into the box" and "reach down deep into it to retrieve" the last part for inspection. He noted the box was not big enough to fit both of his hands and shoulders into at the same time. Claimant identified his left shoulder as the one injured.

¶ 6    Claimant testified he continued to work the rest of the day but noticed "a little bit" of pain in his left shoulder. He stated the day of his accident was a Friday. That evening, he noticed his arm started hurting "quite a bit," and his condition worsened over the weekend. The following Monday, claimant returned to work but noticed he did not have much mobility in his shoulder. Claimant denied experiencing any left shoulder problems prior to his February 19, 2010, accident but acknowledged previous right shoulder problems as the result of a work-related injury while working for a different employer.

¶ 7    On February 25, 2010, the employer asked claimant to reenact his alleged work accident. He stated he was asked to reach into the box so that a photograph could be taken. Claimant submitted the photograph into evidence and noted the only difference between the photograph and his accident was that he was using his right arm instead of his left when the photograph was taken. The photograph was contained within an "Accident & Counter Measure Report" carrying the same date. That report identified the "cause analysis" for claimant's accident to include "over extended reaching limits" and "reaching into a deep box." Additionally, the report stated a "counter measure" for claimant's incident was "to establish [a] technique for lifting from a deep box, or to cut the size of the box down."

¶ 8    Claimant testified he was also asked to write a statement regarding his accident, which he believed he wrote the same day he was asked to reenact the accident. Claimant's typewritten statement was entered into evidence and states as follows:

> "On or about *** 2/19/10, *** while inspecting a 9 peace [*sic*] set of *** spring clips that were located in a 16X16X33 [inch] box, as I was reaching for the last one in the bottom of the box something in my left shoulder snapped. Not any pain at the time. I clocked out of work at about 1430/1500. Later that night my shoulder was in a little pain. But as the weekend went by the pain has gotten more intense. As Monday came around, I have been unable to lift my arm more than 12" to 18"."

On cross-examination, claimant agreed that his memory of what happened was better a few days after the accident, as opposed to the day of arbitration. He further testified that he had the part in his hand when he felt the "pop." Additionally, claimant agreed that he did not immediately feel any pain but asserted he did feel a burning sensation. He acknowledged that he did not include details about feeling a burning sensation in his typewritten statement.

¶ 9    Following his accident, claimant sought medical treatment. On February 25, 2010, he saw Dr. Leland Phipps, the employer's company doctor. According to Dr. Phipps's records, claimant reported he "reach[ed] into a box, 'stretched extra' felt a 'pop' in shoulder." Claimant testified Dr. Phipps took X-rays and recommended he return to work with the restriction that he not raise his arm above shoulder level. Claimant testified he returned to work but his job duties did not change. He stated he was unable to perform his job as he normally did, stating he slowed down a lot and had to have help lifting large objects. Claimant continued to follow up with Dr. Phipps and underwent a course of physical therapy. On April 1, 2010, Dr. Phipps recommended a magnetic resonance imaging (MRI). On April 8, 2010, he noted claimant's MRI showed a small tear in the supraspinatus.

¶ 10 Claimant testified Dr. Phipps referred him to Dr. Louis Angelicchio, whom claimant began seeing on April 20, 2010. Dr. Angelicchio noted claimant began having left shoulder problems on February 19, 2010, "when while working and reaching into a deep box [claimant] overstretched his left arm and shoulder, and suffered a burning in his left shoulder." He found claimant's MRI "consistent with a partial thickness tear of the rotator cuff, degenerative changes at the AC joint, subacromial bursitis, and some mild degenerative changes." Ultimately, he recommended left shoulder surgery.

¶ 11 On July 15, 2010, claimant underwent an independent medical examination with Dr. James Kohlmann. He reported being injured when "he attempted to reach into a very deep, long box to get a part" and stated "he reached over into a long box and had to stretch his shoulder and arm way out as far as he could to reach down in to get the part." Claimant further reported that he felt pain, which gradually worsened. Dr. Kohlmann also recommended surgery, opining claimant "was a good candidate for an arthroscopic evaluation of the shoulder, an arthroscopic bursectomy acromioplasty, and rotator cuff repair if a significant thickness rotator cuff tear is identified at the time of surgery." He further stated as follows:

"It is my opinion, to within medical certainty, that he had significant degenerative changes in the left shoulder that may well have been asymptomatic prior to the onset of symptoms. [Claimant] reports that the symptoms started happening when he reached into the box, which may well be the case. I am relying heavily on the history provided to me by [claimant] to conclude, with medical certainty, that the injury that he reports at work substantially aggravated a preexisting, relatively or otherwise asymptomatic condition of shoulder arthritis and bursitis."

¶ 12 On October 1, 2010, Dr. Kohlmann performed left shoulder surgery on claimant and, postoperatively, diagnosed claimant with left shoulder acromioclavicular joint arthritis, full-thickness rotator cuff tear, and supraspinatus tendon bursitis. Following surgery, claimant was off work, underwent physical therapy, and regularly followed up with Dr. Kohlmann. In January 2011, Dr. Kohlmann released claimant to return to work with no restrictions.

¶ 13 On November 23, 2011, the arbitrator issued his decision, denying claimant benefits under the Act. He concluded as follows:

"The act of reaching for an item, without more, does not constitute an increased risk of injury peculiar to [claimant's] employment. It is a movement consistent with normal daily activity. The evidence describing [claimant's] job duties proved that it was not repetitive in nature because the number of times he had to pick up or examine any item would vary from day to day and the parts were of various shapes and sizes."

The arbitrator found claimant's testimony that he grasped a part in his hand when he was injured was contradicted by his typewritten description of the accident and unsupported by any other evidence. Further, he found claimant's typewritten statement was inconsistent with the accident histories contained in both Dr. Angelicchio's and Dr. Kohlmann's records, stating "that with each new doctor [claimant] embellished his description of the incident." Finally, the arbitrator found claimant's left shoulder injury was "more consistent with natural degeneration rather than the result of any acute event."

¶ 14 On October 29, 2012, the Commission, with one commissioner dissenting, struck the portion of the arbitrator's decision finding claimant's condition was consistent with degeneration rather than an acute event but otherwise affirmed and adopted his decision. Specifically, the Commission agreed "that the mere act of reaching down for an item did not

increase [claimant's] risk of injury beyond what he would experience as a normal activity of daily living." On May 13, 2013, the circuit court of Edgar County confirmed the Commission's decision.

¶ 15    This appeal followed.

¶ 16                                            II. ANALYSIS

¶ 17    On appeal, claimant argues the Commission erred in finding he failed to show his left shoulder injury arose out of his employment. He asserts the evidence regarding the mechanism of his injury was undisputed and showed he was exposed to a risk peculiar to his work for the employer. Claimant contends that, because the facts are undisputed and subject to only a single reasonable inference, the appropriate standard of review is *de novo*. Alternatively, he contends the Commission's decision was against the manifest weight of the evidence.

¶ 18    "Whether a claimant's injury arose out of or in the course of his employment is typically a question of fact to be resolved by the Commission, and the Commission's determination will not be reversed unless it is against the manifest weight of the evidence." *Kertis v. Illinois Workers' Compensation Comm'n*, 2013 IL App (2d) 120252WC, ¶ 13, 991 N.E.2d 868. "However, when the facts are undisputed and susceptible to but a single inference, the question is one of law subject to *de novo* review." *Suter v. Illinois Workers' Compensation Comm'n*, 2013 IL App (4th) 130049WC, ¶ 15, 998 N.E.2d 971. Here, the facts presented were subject to more than a single inference, in particular, whether claimant's act of "reaching" was one to which the general public was equally exposed or whether claimant was exposed to an increased risk by reaching beyond normal limits by virtue of his employment. Under these circumstances, we review the Commission's decision to determine whether it was against the manifest weight of the evidence.

¶ 19    "To obtain compensation under the Act, a claimant bears the burden of showing, by a preponderance of the evidence, that he has suffered a disabling injury which arose out of and in the course of his employment." *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203, 797 N.E.2d 665, 671 (2003). " 'In the course of employment' refers to the time, place and circumstances surrounding the injury" and, to be compensable, an injury "generally must occur within the time and space boundaries of the employment." *Sisbro*, 207 Ill. 2d at 203, 797 N.E.2d at 671. The parties do not dispute that claimant was injured "in the course of" his employment.

¶ 20    "The 'arising out of' component is primarily concerned with causal connection" and is satisfied when the claimant has "shown that the injury had its origin in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." *Sisbro*, 207 Ill. 2d at 203, 797 N.E.2d at 672.

>   "Stated otherwise, 'an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. [Citations.] A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties.' " *Sisbro*, 207 Ill. 2d at 204, 797 N.E.2d at 672 (quoting *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d 665, 667 (1989)).

¶ 21    "There are three categories of risk to which an employee may be exposed: (1) risks distinctly associated with her employment; (2) personal risks; and (3) neutral risks which have no particular employment or personal characteristics." *Springfield Urban League v. Illinois Workers' Compensation Comm'n*, 2013 IL App (4th) 120219WC, ¶ 27, 990 N.E.2d 284. "Injuries resulting from a neutral risk generally do not arise out of the employment and are compensable under the Act only where the employee was exposed to the risk to a greater degree than the general public." *Springfield Urban League*, 2013 IL App (4th) 120219WC, ¶ 27, 990 N.E.2d 284; see also *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 45, 509 N.E.2d 1005, 1008 (1987) ("For an injury to have arisen out of the employment, the risk of injury must be a risk peculiar to the work or a risk to which the employee is exposed to a greater degree than the general public by reason of his employment."); *Caterpillar*, 129 Ill. 2d at 59, 541 N.E.2d at 667 ("[I]f the injury results from a hazard to which the employee would have been equally exposed apart from the employment, or a risk personal to the employee, it is not compensable.").

¶ 22    Here, claimant's injury arose out of an employment-related risk and is compensable. The record shows claimant was injured while performing his job duties, *i.e.*, inspecting parts. Evidence showed he was inspecting parts that were contained within a box that was approximately 36 inches deep and had an opening of 16 x 16 inches. Claimant testified he had to "bend over into the box" and "reach down deep into it to retrieve" the last spring clip for inspection. The box was too narrow to fit both of his arms or shoulders into. As claimant reached for the part, he felt a "pop" in his left shoulder. This evidence unequivocally shows claimant was performing acts that the employer might reasonably have expected him to perform so that he could fulfill his assigned duties on the day in question. As a result, the manifest weight of the evidence supports a finding that claimant's injury arose out of his employment.

¶ 23    Nevertheless, the Commission denied claimant benefits under the Act after finding "that the mere act of reaching down for an item did not increase [claimant's] risk of injury beyond what he would experience as a normal activity of daily living." In other words, the Commission determined claimant was not exposed to a risk to a greater degree than the general public. However, when a claimant is injured due to an employment-related risk–a risk distinctly associated with his or her employment–it is unnecessary to perform a neutral-risk analysis to determine whether the claimant was exposed to a risk of injury to a greater degree than the general public. A neutral risk has no employment-related characteristics. Where a risk is distinctly associated with the claimant's employment, it is not a neutral risk. Under the facts presented, the risk to which claimant was exposed had employment-related characteristics. He was performing acts the employer might reasonably have expected him to perform incident to his assigned duties and, as a result, his injury arose out of his work for the employer.

¶ 24    Further, although the Commission pointed out that claimant's job duties were not repetitive, such a finding is not dispositive of the issue presented. Whether claimant reached into a deep, narrow box only once or multiple times per day, he was, nevertheless, performing an act that was incidental to the fulfillment of his job-related duties at the time of his injury. Under these circumstances, claimant's injury was causally connected to his work.

¶ 25    We also find that the record does not support the Commission's finding that claimant embellished the accident descriptions he provided to his doctors by stating that he stretched "far" or "overstretched" when reaching into the box. In making such a finding, the

Commission determined claimant's typewritten description of his accident was inconsistent with the accident histories he provided to Dr. Angelicchio and Dr. Kohlmann. It noted claimant reported to Dr. Angelicchio that he "overstretched" and to Dr. Kohlmann that he stretched his arm "out as far as he could," but provided no such information in his typewritten statement.

¶ 26 Although claimant's typewritten statement failed to reference the degree to which he stretched or reached into the box, the employer's "Accident & Counter Measure Report" identified causes for claimant's accident that included "over extended reaching limits" and "reaching into a deep box." Additionally, the report noted a "counter measure" for the incident was "to establish [a] technique for lifting from a deep box, or to cut the size of the box down." The employer's report was dated February 25, 2010, the same date claimant testified he prepared his typewritten statement. That same day, claimant also saw Dr. Phipps and reported he was injured after he reached into a box and "stretched extra."

¶ 27 In this instance, the record shows the accident histories claimant provided to Dr. Angelicchio and Dr. Kohlmann were consistent with both the history of the accident contained in the employer's report and the history claimant provided to Dr. Phipps only days after the accident occurred. Through the statements in its report, the employer recognized (1) claimant was performing an employment-related activity and (2) the need to take measures to protect the safety of its employees when performing that activity in the future. The evidence presented supports a finding that claimant reached farther than he typically would have when reaching into the box to retrieve the last spring clip for inspection.

¶ 28 Here, the manifest weight of the evidence shows claimant's left shoulder injury arose out of his employment. Although the act of "reaching" is one performed by the general public on a daily basis, the evidence in this case established the risk to which claimant was exposed was necessary to the performance of his job duties at the time of injury. His action in reaching and stretching his arm into a deep, narrow box to retrieve a part for inspection was distinctly associated with his employment.

¶ 29 We note our finding in this case is consistent with this court's recent decision in *Autumn Accolade v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120588WC, ¶ 18, 990 N.E.2d 901, wherein the claimant, a caregiver at an assisted living facility, was injured while assisting one of the facility's residents in the shower. The facts of that case were as follows:

"[The] [c]laimant testified that she was concerned that the resident might slip because the shower was producing an abundance of soap suds. As a result, claimant took hold of the resident with her right hand, turned left, extended her left arm, and removed the soap dish which was causing the suds to accumulate in the shower. As claimant was performing these activities, she felt a 'pop' in her neck and experienced pain travel down her right arm." *Autumn Accolade*, 2013 IL App (3d) 120588WC, ¶ 18, 990 N.E.2d 901.

Based upon those circumstances, this court held the Commission's finding that the claimant's injury arose out of her employment was not against the manifest weight of the evidence. *Autumn Accolade*, 2013 IL App (3d) 120588WC, ¶ 18, 990 N.E.2d 901.

¶ 30 In so holding, we rejected the employer's contention that the claimant was "merely engaged in the act of 'reaching' at the time of the injury," an activity that the employer asserted was " 'personal in nature' and 'not in any way peculiar to [the claimant's] employment.' " *Autumn Accolade*, 2013 IL App (3d) 120588WC, ¶ 19, 990 N.E.2d 901. We held the employer's argument "ignore[d] the fact that, at the time of the occurrence, [the] claimant was

engaged in an activity she might reasonably be expected to perform incident to her assigned duties, *i.e.*, ensuring the safety of a resident of the assisted living facility." *Autumn Accolade*, 2013 IL App (3d) 120588WC, ¶ 19, 990 N.E.2d 901. Similar to *Autumn Accolade*, both the employer's position and the Commission's decision in the instant case ignore the fact that claimant was injured while performing acts he "might reasonably be expected to perform incident to his assigned duties." (Internal quotation marks omitted.) *Sisbro*, 207 Ill. 2d at 204, 797 N.E.2d at 672.

¶ 31 "Although we are reluctant to set aside the Commission's decision on a factual question, we will not hesitate to do so when, as in this case, the clearly evident, plain, and indisputable weight of the evidence compels an opposite conclusion." *Potenzo v. Illinois Workers' Compensation Comm'n*, 378 Ill. App. 3d 113, 119, 881 N.E.2d 523, 529 (2007). Under the facts of this case, an opposite conclusion from that of the Commission is clearly evident and its decision is against the manifest weight of the evidence.

¶ 32 III. CONCLUSION

¶ 33 For the reasons stated, we reverse the circuit court's judgment and remand to the Commission for further proceedings consistent with this decision.

¶ 34 Reversed and remanded.