# Illinois Official Reports

## Appellate Court

---

**Noonan v. Illinois Workers' Compensation Comm'n**, 2016 IL App (1st) 152300WC

---

| | |
|---|---|
| Appellate Court Caption | TERRY NOONAN, Plaintiff-Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (City of Chicago, Appellee). |
| District & No. | First District, Workers' Compensation Commission Division<br>Docket No. 1-15-2300WC |
| Filed | October 21, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 13-L-50026, 13-L-50029; the Hon. Robert Lopez Cepero, Judge, presiding. |
| Judgment | Reversed in part and vacated in part; original Commission decision reinstated. |
| Counsel on Appeal | Mark Schechter and Larry Coven, both of Coven Law Group, of Chicago, for appellant.<br><br>Christopher L. Jarchow, of Hennessy & Roach, P.C., of Chicago, for appellee. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Hoffman and Hudson concurred in the judgment and opinion.<br>Presiding Justice Holdridge specially concurred, with opinion.<br>Justice Stewart dissented, with opinion. |

**OPINION**

¶ 1    In April 2008, claimant, Terry Noonan, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 to 30 (West 2006)), alleging he sustained a work-related injury to his right wrist on March 31, 2008, and seeking benefits from the employer, the City of Chicago. Following a hearing, the arbitrator determined claimant failed to prove that he sustained an injury arising out of his employment and denied him benefits. The Illinois Workers' Compensation Commission (Commission) affirmed and adopted the arbitrator's decision; however, on judicial review, the circuit court of Cook County reversed and remanded to the Commission for an award of benefits to claimant.

¶ 2    On remand, the Commission, again, affirmed and adopted the arbitrator's denial of benefits. It also provided a more detailed explanation of its decision. On review, the circuit court entered an order finding its previous order "was in error" and the Commission's initial decision should have been confirmed. The court held its previous remand order was "of no consequence." Claimant filed a motion to reconsider the court's decision, which the court denied. He now appeals, arguing the Commission's finding that he failed to prove he sustained an injury arising out of his employment and its denial of benefits was against the manifest weight of the evidence. We reverse in part, vacate in part, and reinstate the Commission's original decision.

¶ 3                                    I. BACKGROUND

¶ 4    At arbitration, claimant testified he initially worked for the employer as a "motor truck driver." However, he sustained a work-related injury to his back that resulted in permanent restrictions and rendered him unable to perform the job duties for that position. Approximately three months prior to the accidental injury at issue on appeal, claimant began working for the employer as a "clerk." He testified the duties associated with that position included filling out forms called "truck driver sheets" and answering the phone when no one else was available. It took him approximately five minutes to fill out each form, and he typically worked each day from 7 a.m. to 3:30 p.m.

¶ 5    Claimant asserted that on March 31, 2008, he was injured while working for the employer as a clerk. He described the incident resulting in his injury as follows:

"I was filling out a truck sheet and I made a mistake. I got out of my chair, grabbed another sheet, sat down, and I believe when I sat down, I put my elbow on the desk, knocked the pen off, pen fell to my right. So I put my left hand on top of the desk, and I'm sitting in a chair just like [the court reporter] here, and when I went and reached to my right, I didn't know that the chair got up on its wheel. So[,] just as I was maybe about two inches or [an] inch from picking the pen up off the floor, the chair went out from underneath me. I stuck my right hand out to brace my fall."

Claimant testified his right hand came into contact with the floor and "it felt like [he] jammed it." He felt pain and ultimately sought and received medical treatment, including surgery, for an injury to his right wrist.

¶ 6    On cross-examination, claimant denied that the rolling chair he had been sitting in had been positioned on a slope or a slant. He stated he "went over sideways to [his] right" when attempting to retrieve the pen he dropped, noting he could not bend forward because he had

- 2 -

undergone disk replacement surgery. Further, he stated he thought the incident involved an ordinary fall.

¶ 7     On April 20, 2012, the arbitrator issued a decision, finding claimant failed to prove his right wrist injury arose out of his employment and denying him benefits under the Act. Specifically, the arbitrator determined claimant "failed to prove that the simple act of sitting in a rolling chair and reaching for a pen exposed him to an increased risk of injury that was beyond what members of the general public are regularly exposed to." On December 26, 2012, the Commission affirmed and adopted the arbitrator's decision without further comment. Claimant appealed, and on March 14, 2014, the circuit court entered an order reversing the Commission's decision based on its "arising out of" analysis and remanding the matter for an award of benefits to claimant.

¶ 8     On December 26, 2014, the Commission issued a decision and opinion on remand. It persisted in affirming and adopting the arbitrator's denial of benefits but provided additional reasoning for its finding that claimant failed to prove that his right wrist injury arose out of his employment. Again, claimant sought judicial review. On March 12, 2015, the circuit court ordered as follows:

> "A. The [circuit court's] Order of March 14, 2014[,] was in error. The Commission's decision should have been affirmed.
> B. The March 14, 2014[,] Remand Order is of no consequence."

The circuit court did not address the Commission's December 2014 decision and opinion on remand. Claimant filed a motion to reconsider, which the court denied.

¶ 9     This appeal followed.

¶ 10                              II. ANALYSIS

¶ 11     On appeal, claimant challenges the Commission's finding that he failed to establish an accidental injury arising out of his employment. However, prior to considering claimant's arguments, we are compelled to comment on two portions of the path this claim has traveled. First, we address the Commission's decision to ignore the circuit court's March 14, 2014, remand order. In its decision dated December 26, 2014, the Commission addressed the circuit court's remand order as follows:

> "The Commission concludes the Circuit Court did not make any findings based on the correct legal standard in determining the Commission's decision finding [claimant] failed to prove he sustained an injury arising out of his employment was against the manifest weight of the evidence. As the Circuit Court mistakenly applied erroneous legal standards in contradiction of the Act and well established case law in determining that the Commission's December 26, 2012[,] Decision was against the manifest weight of the evidence, the Commission is foreclosed from applying the Order of the Circuit Court here, as doing so would require us to depart from well established existing authority."

Its frustration notwithstanding, the Commission could not simply ignore the circuit court's order. No matter how defective the circuit court's reasoning may have been, the Commission was charged with following the court's order, reversing the Commission and ordering it to award benefits. See *Northwestern University v. Industrial Comm'n*, 409 Ill. 216, 219, 99 N.E.2d 18, 20 (1951) ("The [C]ommission was, of course, required to follow the directions of

- 3 -

the [circuit] court, but upon review in this court the whole record is open, and we have jurisdiction to pass upon the correctness of the order remanding the case to the *** Commission."); *People ex rel. Campo v. Matchett*, 394 Ill. 464, 469, 68 N.E.2d 747, 749 (1946) ("Where a cause is remanded by a court of review to a lower court with directions to enter a certain order or decree, the latter court has no discretion but to enter the decree as directed.").

¶ 12    Second we address the circuit court's March 12, 2015, order from which claimant appeals. The court entered that order after claimant sought judicial review of the Commission's December 2014 decision and opinion on remand. In the order, the court found the Commission's original decision should have been upheld and held its previous order, reversing and remanding to the Commission, was "of no consequence."

¶ 13    We note "[a] circuit court's jurisdiction to review a decision of the Commission is a 'special statutory power' " and "must be exercised within the limits prescribed by the relevant statute." *Illinois State Treasurer v. Illinois Workers' Compensation Comm'n*, 2013 IL App (1st) 120549WC, ¶ 27, 2 N.E.3d 351. Under the Act, a circuit court "may confirm or set aside the decision of the Commission" on judicial review. 820 ILCS 305/19(f)(2) (West 2006).

¶ 14    In this instance, the circuit court acted without authority when ordering that the Commission's original decision should have been upheld and its previous order was "of no consequence." The matter was before the court for purposes of reviewing the Commission's decision and opinion on remand, and the court was limited by the Act to confirming or setting aside that decision. The court should not have addressed previous orders entered in the matter by either it or the Commission.

¶ 15    Although we find the circuit court committed error in connection with its March 2015 order, that error does not affect our review of the matter. "Where, as here, the [circuit] court reverses the Commission's initial decision and the Commission enters a new decision on remand, this court must decide whether the Commission's initial decision was proper." *Vogel v. Industrial Comm'n*, 354 Ill. App. 3d 780, 785-86, 821 N.E.2d 807, 812 (2005). Thus, we turn to the merits of claimant's appeal and consider the propriety of the Commission's initial decision.

¶ 16    "To obtain compensation under the Act, a claimant bears the burden of showing, by a preponderance of the evidence, that he has suffered a disabling injury which arose out of and in the course of his employment." *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 203, 797 N.E.2d 665, 671 (2003). "Whether an injury arises out of and in the course of the claimant's employment is a question of fact to be resolved by the Commission, and we will not disturb its determination unless it is against the manifest weight of the evidence." *Metropolitan Water Reclamation District of Greater Chicago v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 1010, 1013, 944 N.E.2d 800, 803 (2011). "A finding of fact is contrary to the manifest weight of the evidence only where an opposite conclusion is clearly apparent." *Id.*

¶ 17    " 'In the course of employment' refers to the time, place and circumstances surrounding the injury." *Sisbro*, 207 Ill. 2d at 203, 797 N.E.2d at 671. In this instance, there is no dispute that claimant's accident occurred "in the course" of his employment. The sole issue presented on appeal is whether the Commission erred in finding claimant's accident was not one "arising out of" of his employment.

¶ 18    "The 'arising out of' component is primarily concerned with causal connection" and is satisfied when the claimant shows "that the injury had its origin in some risk connected with,

or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." *Id.* at 203, 797 N.E.2d at 672.

> "Stated otherwise, 'an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. [Citation.] A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties.' " *Id.* at 204, 797 N.E.2d at 672 (quoting *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d at 667 (1989)).

"For an injury to have arisen out of the employment, the risk of injury must be a risk peculiar to the work or a risk to which the employee is exposed to a greater degree than the general public by reason of his employment." *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 45, 509 N.E.2d 1005, 1008 (1987). "[I]f the injury results from a hazard to which the employee would have been equally exposed apart from the employment, or a risk personal to the employee, it is not compensable." *Caterpillar*, 129 Ill. 2d at 59, 541 N.E.2d at 667.

¶ 19    Consistent with these principles, this court has categorized the risks to which an employee may be exposed as "(1) risks that are distinctly associated with the employment; (2) risks that are personal to the employee; and (3) neutral risks that do not have any particular employment or personal characteristics." *Metropolitan*, 407 Ill. App. 3d at 1014, 944 N.E.2d at 804. As indicated by the relevant case authority, employment-related risks are compensable while personal risks typically are not. Further, "[i]njuries resulting from a neutral risk generally do not arise out of the employment and are compensable under the Act only where the employee was exposed to the risk to a greater degree than the general public." *Id.* "Such an increased risk may be either qualitative, such as some aspect of the employment which contributes to the risk, or quantitative, such as when the employee is exposed to a common risk more frequently than the general public." *Id.*

¶ 20    Initially, claimant maintains his right wrist injury was compensable because it resulted from an employment-related risk. Specifically, he contends his accidental injuries arose out of his employment because the act he was performing at the time of his accident—attempting to retrieve a pen he had been using to fill out forms—was "in furtherance of his duties" for the employer. Claimant maintains this act was "incidental to his employment." We disagree.

¶ 21    Here, claimant's job duties as a clerk required him to fill out forms and occasionally answer telephone calls. He was injured at work when the rolling chair he was sitting in "went out from underneath" him as he reached to retrieve a dropped pen. Although claimant was at work, the act he was performing when injured—reaching for a dropped item while sitting in a chair—was not one he was instructed to perform or had a duty to perform. Contrary to claimant's assertions, we also find the act described was not incidental to his assigned duties. In particular, the act of reaching to the floor while sitting in a chair was not required by claimant's job duties. The fact that he was reaching to retrieve a dropped pen and used a pen to fill out forms does not warrant an opposite conclusion. The risk of injury at issue was simply not one "distinctly associated" with claimant's employment.

¶ 22    We note claimant primarily relies on four cases to support his position that his injury resulted from an employment-related risk. In *Young v. Illinois Workers' Compensation Comm'n*, 2014 IL App (4th) 130392WC, ¶¶ 4-5, 13 N.E.3d 1252, the claimant was a parts

inspector who injured his shoulder while reaching into a deep, narrow box to retrieve a part for inspection. Ultimately, this court found the claimant's injury resulted from an employment-related risk and reversed the Commission's denial of benefits. *Id.* ¶¶ 22-23. In so holding, we determined the claimant's actions when injured—reaching and stretching his arm into a deep, narrow box to retrieve a part for inspection—were necessary for the fulfillment of his job duties and, thus, distinctly associated with the claimant's employment. *Id.* ¶ 28.

¶ 23    In *Autumn Accolade v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120588WC, ¶ 3, 990 N.E.2d 901, the claimant worked for the employer as a caregiver at its assisted-care facility and was responsible for helping residents with the activities of daily living. While assisting a resident in the shower and holding onto the resident, the claimant reached to remove a soap dish that she believed posed a safety hazard and felt a "pop" in her neck. *Id.* ¶ 4. We upheld the Commission's finding that the claimant's injury arose out of her employment, stating the "claimant sustained the injury at issue while attempting to ensure the safety of a resident at the assisted living facility, an act which claimant might reasonably be expected to perform incident to her assigned duties." *Id.* ¶ 18.

¶ 24    In *O'Fallon School District No. 90 v. Industrial Comm'n*, 313 Ill. App. 3d 413, 414-15, 729 N.E.2d 523, 524 (2000), the claimant was a teacher who was assigned to hall duty. She was responsible for "insuring the safety" of students and teachers in the hallways and "was assigned specifically the task of stopping children from running in the hallways." *Id.* at 416, 729 N.E.2d at 526. The claimant was injured when she noticed a student running in the hall and turned and twisted her body to pursue the student. *Id.* This court determined the claimant's injury had its origin in a risk arising out of her employment, in that she had been "ordered specifically to undertake the risk of pursuing a running student." *Id.* at 417, 729 N.E.2d at 526.

¶ 25    Finally, in *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 1052, 765 N.E.2d 1064, 1066 (2002), the claimant worked for the employer as a nail technician and was injured when she slipped on ice in a parking lot while retrieving work-related supplies from her vehicle. We held the claimant's accident arose out of her employment, stating she "was required to park in the rear of employer's business on a lot employer financially contributed to maintain, and she needed certain supplies to perform her job." *Id.* at 1054, 765 N.E.2d at 1068-69. Further, we stated that: "But for the demands of her job, [the claimant] would not have needed to make a second trip to her car or negotiate the ice between her car and the salon door while carrying a large case. Her risk of injury accordingly was greater than that of the general public." *Id.* at 1054, 765 N.E.2d at 1069.

¶ 26    We find each of these cases factually distinguishable from the present case. Initially, we note *Homerding* appears to have been based on a neutral-risk analysis as we described the claimant's risk of injury as being greater than that of the general public. Thus, it does not advance claimant's position that he was injured as the result of an employment risk. Further, the facts in *Young*, *Autumn Accolade*, and *O'Fallon* each show that the claimant was performing acts his or her employer might reasonably have expected the claimant to perform when fulfilling his or her job duties—a parts inspector reaching into a box to retrieve a part for inspection (*Young*), a caregiver reaching to remove a safety hazard while holding onto an individual in the shower (*Autumn Accolade*), and a hall monitor turning and twisting to pursue a running student (*O'Fallon*). Evidence presented in this case failed to similarly establish claimant's actions—reaching to retrieve a dropped object while sitting in a chair—were acts the employer might reasonably have expected him to perform incident to his clerk duties.

- 6 -

¶ 27    We decline to find claimant's risk of injury in the present case was distinctly associated with his work for the employer. Instead, we find the risk of falling from a chair while reaching to the floor is one which claimant would have been equally exposed to apart from his work for the employer. Thus, it presents a neutral risk and is compensable only when claimant establishes he was quantitatively or qualitatively exposed to the risk to a greater degree than the general public. On appeal, claimant argues he was *qualitatively* subjected to a greater risk than that of the general public because he was injured while attempting to pick up a writing instrument that was essential to the completion of his job duties. Again, we disagree.

¶ 28    Initially, we note that when addressing the neutral-risk analysis, claimant cites to several Commission decisions to support his argument. However, decisions of the Commission in unrelated cases are not precedential authority in cases before this court. *S&H Floor Covering, Inc. v. Workers' Compensation Comm'n*, 373 Ill. App. 3d 259, 266, 870 N.E.2d 821, 826 (2007). They should not be cited by the parties on appeal, and we decline to consider them.

¶ 29    This court has stated that "[e]mployment-related risks associated with injuries sustained as a consequence of a fall are those to which the general public is not exposed such as the risk of tripping on a defect at the employer's premises, falling on uneven or slippery ground at the work site, or performing some work-related task which contributes to the risk of falling." *First Cash Financial Services v. Industrial Comm'n*, 367 Ill. App. 3d 102, 106, 853 N.E.2d 799, 804 (2006). Here, no evidence was presented as to any defective condition on the employer's premises which would have contributed to claimant's injury. Specifically, the evidence reflected only that claimant had been sitting in an ordinary chair and on an ordinary surface.

¶ 30    Additionally, we do not find any work-related task contributed to his risk of falling. In this instance, claimant points to the fact that he was reaching for a pen to use in filling out forms as an aspect of his employment which contributed to his risk of injury. However, the risk posed from reaching for a pen while sitting in a rolling chair is no greater than if claimant had been reaching to retrieve any other object, including one wholly personal to him. As a result, we find claimant's employment did not expose him to a neutral risk to a greater degree than the general public.

¶ 31    Claimant further argues he was "clearly exposed to a risk that was greater than that of the general public" because he suffered a previous work-related back injury, which he testified prohibited him from bending forward and required him to bend "sideways to [his] right" to pick up the dropped pen. He maintains these facts clearly connect his right wrist injury to his employment. Claimant cites *Interlake, Inc. v. Industrial Comm'n*, 161 Ill. App. 3d 704, 515 N.E.2d 202 (1987), to support his argument.

¶ 32    In that case, the claimant worked for the employer as a motor inspector and injured his back in a work-related accident. *Id.* at 706, 515 N.E.2d at 203. The claimant testified that after returning to work following that initial accident, he sustained a further injury to his back when he bent over to pick up a screwdriver at his foreman's request. *Id.* Ultimately, this court determined the claimant's accident arose out of his employment. *Id.* at 711, 515 N.E.2d at 206. In so holding, we rejected an argument by the employer that "the act of bending over is a personal, routine activity and that we should not consider claimant's prior work-related accident." *Id.* at 711-12, 515 N.E.2d at 207. We concluded the second accident could not be considered in isolation and since the claimant's first accident appeared "to be a compensable, work-related injury, 'the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial

cause.' " *Id.* at 712, 515 N.E.2d at 207 (quoting 1 Arthur Larson, Larson's Workers' Compensation Law § 13.11(a), at 3-354 (1985)).

¶ 33    Again, we find *Interlake* distinguishable from the facts presented here. Notably, this case does not involve multiple injuries to the same body part. Rather, evidence showed claimant's previous work injury concerned a condition of ill-being in his back while his second injury involved his right wrist. Thus, unlike *Interlake*, the claim at issue on appeal does not involve the "progression" of a work-related injury. Additionally, although claimant testified his back injury caused him to bend to the right rather than forward to pick up the pen he dropped, no evidence was presented that bending to the right increased claimant's risk of falling over in the rolling chair when reaching to the floor. Without such evidence, we cannot say claimant's previous work-related back injury was causally related to his subsequent accident and right wrist injury.

¶ 34    Finally, we find the circumstances of this case more similar to cases relied upon by the employer. First, in *Board of Trustees v. Industrial Comm'n*, 44 Ill. 2d 207, 209, 254 N.E.2d 522, 523 (1969), the claimant was a teaching assistant who heard a noise while seated at his desk, turned in his chair, and "heard 'something snap' in his back." On review, the supreme court found no evidence of a causal connection between the claimant's employment and his accidental injury, stating as follows:

> "The appellant simply turned in his chair and suffered the injury. There was no suggestion that the chair was defective or unusual in any way. The medical evidence was that because of its degenerated condition any simple and normal activity would have caused the appellant's disc to rupture. The injury was not caused by a risk incidental to the employment." *Id.* at 214-15, 254 N.E.2d at 526.

¶ 35    Second, in *Hopkins v. Industrial Comm'n*, 196 Ill. App. 3d 347, 348, 553 N.E.2d 732, 733 (1990), the claimant worked for the employer as a police sergeant and was responsible for training another officer. He injured his back when the trainee officer asked him a question and the claimant turned in his chair to answer. *Id.* In finding the claimant's back injury did not arise out of his employment, we stated as follows:

> "This case is very similar to [*Board of Trustees*]. Here, claimant 'simply turned in his chair and suffered injury. There was no suggestion that the chair was defective or unusual in any way.' There is no definite proof that claimant's gun and holster caught on the chair as he turned. More is required than the fact that an accident occurred at claimant's workplace." *Id.* at 351-52, 553 N.E.2d at 735.

Ultimately, we found the claimant's injury resulted from a noncompensable personal risk. *Id.* at 352, 553 N.E.2d at 735.

¶ 36    In both *Board of Trustees* and *Hopkins*, the act of turning in a chair, without more, was insufficient to warrant a finding of compensability. Similarly, claimant's action of bending over or reaching while seated in his work chair, without more, is insufficient to establish a work-related cause to his accidental injury. Under the circumstances presented we find no error in the Commission's finding that claimant failed to establish an injury arising out of his employment. Its decision was not against the manifest weight of the evidence.

¶ 37                                    III. CONCLUSION

¶ 38         For the reasons stated, we reverse the circuit court's March 14, 2014, judgment, reversing the Commission's initial decision and remanding to the Commission for an award of benefits to claimant; vacate the Commission's December 26, 2014, decision and opinion on remand; vacate the circuit court's March 12, 2014, decision, finding its previous remand order was "of no consequence"; and reinstate the Commission's initial December 26, 2012, decision.

¶ 39         Reversed in part and vacated in part; original Commission decision reinstated.

¶ 40         PRESIDING JUSTICE HOLDRIDGE, specially concurring.

¶ 41         I join in the majority's judgment and analysis. I write separately to expand upon the majority's discussion of our decisions in *Young v. Illinois Workers' Compensation Comm'n*, 2014 IL App (4th) 130392WC, and *Autumn Accolade v. Illinois Workers' Compensation Comm'n*, 2013 IL App (3d) 120588WC (see *supra* ¶¶ 22-23, 26), and to clarify the legal analysis that should have been applied in those cases. The majority concludes that *Young* and *Autumn Accolade* are distinguishable from the instant case because, in each of those cases, the claimant was injured while performing acts that the employer might reasonably have expected the claimant to perform incidental to his or her job duties. *Supra* ¶ 26. However, even if I were to reject that distinction and find this case analogous to *Young* and *Autumn Accolade*, I would nevertheless decline to rely upon those cases because, in my view, they apply an incorrect analysis. A claimant may not obtain benefits for injuries caused by activities of everyday living (such as bending, reaching, or stooping), even if he was ordered or instructed to perform those activities as part of his job duties, unless the claimant's job "required him to perform those activities more frequently than members of the general public or in a manner that increased the risk." *Adcock v. Illinois Workers' Compensation Comm'n*, 2015 IL App (2d) 130884WC, ¶ 39. In other words, such injuries should be analyzed under neutral risk principles. Although both *Young* and *Autumn Accolade* involved injuries stemming from the performance of everyday activities, neither case applied a neutral risk analysis. Accordingly, I am now of the opinion that *Young* and *Autumn Accolade* were wrongly decided, and I would decline to follow them. See *Adcock*, 2015 IL App (2d) 130884WC, ¶ 41 n.2.

¶ 42         JUSTICE STEWART, dissenting.

¶ 43         I respectfully dissent from the opinion of my distinguished colleagues.

¶ 44         As the majority notes, a risk is distinctly associated with a worker's employment "if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties." *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d 665, 667 (1989). However, the majority then determines that an employer would not reasonably expect a clerical worker to bend over to pick up a dropped pen. This finding defies common sense. In my view, any employer should reasonably expect a clerical employee to bend over and pick up a dropped pen. Accordingly, I would find that the acts that resulted in the claimant's injury were distinctly associated with his employment.

¶ 45    I must also note that I disagree with Justice Holdridge's special concurrence. Despite my disagreement with the majority's categorization of the risk involved in this case, I believe that the majority employed the correct analysis by first determining whether the claimant's injury resulted from an employment risk. See *Young v. Illinois Workers' Compensation Comm'n*, 2014 IL App (4th) 130392WC, ¶ 23, 13 N.E.3d 1252 ("when a claimant is injured due to an employment-related risk *** it is unnecessary to perform a neutral-risk analysis"). Further, in my view, if a worker is injured performing an everyday activity, such as "bending over," and that activity is incidental to his employment, the injury results from an employment risk, and a neutral-risk analysis should not be employed. In other words, I adhere to the views expressed in my special concurrence in *Adcock v. Illinois Workers' Compensation Comm'n*, 2015 IL App (2d) 130884WC, ¶¶ 48-66, 38 N.E.3d 587 (Stewart, J., specially concurring).

¶ 46    Accordingly, I would reverse the original decision of the Commission and remand to the Commission for an award of benefits.